CAL P. SAUNDERS, Esq., (SBN 63497)
TAUFIKI D. JOSHUA, Esq., (SBN 207636)
OFFICE OF THE CITY ATTORNEY
CITY OF INGLEWOOD
One Manchester Boulevard, Suite 860
Inglewood, California 90301
Telephone:  (310) 412-5372
Facsimile:  (310) 412-8865
tjoshua@cityofinglewood.org

Attorneys for Defendants, **CITY OF INGLEWOOD, INGLEWOOD POLICE DEPARTMENT, DETECTIVE DAVID THOMAS**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN STEPHEN REYNOLDS,<br><br>                Plaintiff,<br><br>        vs.<br><br>THE CITY OF INGLEWOOD, et al.,<br><br>                Defendants. | ) CASE NO.:  CV08-7190 GW(MLG)<br>) **Hon. Judge:  George Wu**<br>)<br>) **DECLARATIONS OF TAUFIKI D.**<br>) **JOSHUA, LT. MARIE**<br>) **DIBERNARDO, LT. MARK FRIED,**<br>) **DETECTIVE DAVID THOMAS,**<br>) **KEITH RANKINS AND ETHAN**<br>) **SIDDALL SUBMITTED IN SUPPORT**<br>) **OF MOTION FOR SUMMARY**<br>) **JUDGMENT OR ALTERNATIVELY**<br>) **SUMMARY ADJUDICATION**<br>)<br>) [Motion for Summary Judgment, or<br>) Alternatively Summary Adjudication of<br>) Individual Issues; Statement of<br>) Uncontroverted Facts and Conclusions of<br>) Law; and [Proposed]<br>)<br>) Date: Per Ct. Order – No Date Set<br>) Time: Per Ct. Order – No Time Set<br>) Place: Courtroom 6-A<br>) Judge:  Honorable Marc L. Goldman<br>)<br>)<br>)<br>) |

        TO PLAINTIFF IN PRO PER, ALL INTERESTED PARTIES AND TO

THEIR COUNSEL OF RECORD:

1    Defendants, CITY OF INGLEWOOD, INGLEWOOD POLICE

2   DEPARTMENT, and DETCETIVE DAVID THOMAS, OFFER THE

3   ATTACHED  Declarations and Exhibits in support of Motion for Summary

4   Judgment, or  Alternatively, for Summary Adjudication of Individual Issues.

5

6   DATED:  December 3, 2009          OFFICE OF THE CITY ATTORNEY
                                     CITY OF INGLEWOOD

7

8

9                                    BY_____

10                                        Taufiki D. Joshua
                                          Attorneys for Defendants
11                                        CITY OF INGLEWOOD,
                                          INGLEWOOD POLICE
12                                        DEPARTMENT, and DETECTIVE
                                          DAVID THOMAS
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

## **DECLARATION OF TAUFIKID. JOSHUA**

I, Taufiki D. Joshua, declare as follows:

1.      I am an attorney at law, duly authorized to practice before this Court and am employed as an Assistant City Attorney for the Office of the City Attorney for the City of Inglewood, attorneys of record for Defendants CITY OF INGLEWOOD, INGLEWOOD POLICE DEPARTMENT, and DETECTIVE DAVID THOMAS in the within-entitled action.  I have personal knowledge of the facts stated herein, except those stated upon information and belief and, as to those matters, I believe them to be true.  If called to testify to the matters herein, I could and would competently do so.

2.      Defendant David Frizelle, a former Inglewood Police Department Officer, is deceased.  As such, Defendant Frizelle has never appeared in the instant litigation.

3.      A formal letter pursuant to Local Rule 7 was mailed to Plaintiff on October 19, 2009 in an attempt to informally resolve issues in the instant case.  A true and correct copy of this letter is attached to and incorporated herein by reference as Exhibit "G".  In this letter, I requested that Plaintiff contact me in whatever manner possible given his incarceration to discuss the matters at issue in this motion.    Unfortunately Plaintiff never contacted me in response to my October 19, 2009 letter.  As such, the issues remain unresolved.

4.      Attached to and incorporated herein by referenced  as Exhibit "A" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.0.6, entitled "Law Enforcement Code of Ethics".

5.      Attached to and incorporated by reference as Exhibit "B" is a true and correct copy of the Inglewood Police Department, General Orders, No. 13.0.0, entitled "Professional Conduct and Responsibilities".

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

6.      Attached to and incorporated herein by reference as Exhibit "C" is a true and correct copy of the Inglewood Police Department, General Orders, No. 13.0.2, entitled "Disciplinary System".

7.      Attached to and incorporated herein by reference as Exhibit "D" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.1.3 entitled "Use of Force".

8.      Attached to and incorporated herein by reference as Exhibit "E" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.1.8 entitled "Written Documentation of Force".

9.      Attached to and incorporated herein by reference as Exhibit "F" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.1.0 entitled "Arrest With or Without a Warrant".

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 3rd day of December, 2009 at Inglewood, California.


_____/s/_____

TAUFIKI D. JOSHUA, Declarant

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

## <u>DECLARATION OF LIEUTENANT MARIE DIBERNARDO</u>

I, Lieutenant Marie DiBernardo, state and declare as follows:

1.      I have personal knowledge of the matters set forth herein, except for those matters stated on information and belief, and as to those matters, I believe them to be true.  If called as a witness, I could and would competently testify thereto.

2.      I am employed as a Lieutenant for the City of Inglewood Police Department ("Department") and assigned to the Internal Affairs Division.  I have been employed by the Department for more than 19 years.

3.      Among other responsibilities, my current assignment includes supervision of the Department's Internal Affairs Division.  The Internal Affairs Division reviews and investigates complaints of officer misconduct and ensures implementation and compliance with the Inglewood Police Department General Orders.  As such, I am thoroughly familiar with the policies, practices, and customs of the Inglewood Police Department as they existed on October 25, 2007, the date of the incident that forms the basis of this action.

4.      I am also informed and believe that Plaintiff in this matter alleges that the City of Inglewood  and the Inglewood Police Department promulgated, maintained, applied and enforced the continuation of policies, practices, customs, and usages in violation of the Fourth and Fourteenth Amendments of the United States Constitution.  I am further informed that Plaintiff in this action specifically alleges that the City of Inglewood and the Inglewood Police Department failed to appropriately oversee, manage, and properly train its police officers with conscious disregard and deliberate indifference to the constitutional rights of third parties.

5.      No such policies, practices, or customs existed at the Department at the time of the incident.

/ / / /

/ / / /

5

6.      Further, there are no other policies, practices or customs of the Department at the time of the incident that caused the alleged constitutional deprivations cited in the instant lawsuit.

7.  Attached to and incorporated herein by reference as Exhibit "A" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.0.6, entitled "Law Enforcement Code of Ethics" pertaining to the standards expected of Inglewood Police employees as to their general conduct, integrity, and their obligation to take proper action when necessary in their capacities as peace officers in the employment of the City of Inglewood and the Inglewood Police Department. This was the policy in effect on October 25, 2007.  There was not, and is not, any unwritten policy or custom within the Inglewood Police Department which is contrary to that set forth in Exhibit "A".

8.      Attached to and incorporated herein by reference as Exhibit "B" is a true and correct copy of the Inglewood Police Department, General Orders, No. 13.0.0 entitled "Professional Conduct and Responsibilities" pertaining to the integrity and standard of conduct of Inglewood Police Department personnel.  This was the policy in effect on October 25, 2007.  There was not, and is not, any written policy, or custom within the Inglewood Police Department which is contrary to that set forth in Exhibit "B".

9.      Attached to and incorporated herein by reference as Exhibit "C" is a true and correct copy of the Inglewood Police Department, General Orders, No. 13.0.2 entitled "Disciplinary System" pertaining to discipline procedures for employees of the Inglewood Police Department as well as reporting of misconduct of Inglewood Police Department personnel.  This was the policy in effect on October 25, 2007.  There was not, and is not, any unwritten policy or custom within the Inglewood Police Department which is contrary to that set forth in Exhibit "C".

/ / / /

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

10.     Attached to and incorporated herein by reference as Exhibit "D" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.1.3 entitled "Use of Force" pertaining to the use of force.  This was the policy in effect on October 27, 2005.  There was not, and is not, any unwritten policy or custom within the Inglewood Police Department which is contrary to that set forth in Exhibit "D".

11.     Attached to and incorporated herein as Exhibit "E" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.1.8. entitled "Written Documentation of Force" pertaining to the protocol and procedures for mandatory documentation, reporting, and investigation of the use of force.  This was the policy in effect on October 25, 2007.  There was not, and is not, any unwritten policy or custom within the Inglewood Police Department which is contrary to that set forth in Exhibit "E".

12.     Attached to and incorporated herein as Exhibit "F" is a true and correct copy of the Inglewood Police Department, General Orders, No. 1.1.0 entitled "Arrest With or Without a Warrant" pertaining to arresting criminal suspects.  This was the policy in effect on October 27, 2005.  There was not, and is not, any unwritten policy or custom within the Inglewood Police Department which is contrary to that set forth in Exhibit "F".

13.     Further, I have reviewed the Internal Affairs records which document complaints of officer misconduct.  After reviewing said records, I have determined that neither Plaintiff nor anyone acting on Plaintiff's behalf ever made any

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

complaint of officer misconduct against any of the officers involved in the incident which forms the basis of this action.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on December 2, 2009, at Inglewood, California.


_____/s/_____

MARIE DIBERNARDO, Declarant

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

## DECLARATION OF LIEUTENANT MARK FRIED

I, Lieutenant Mark Fried, state and declare as follows:

1.     I have personal knowledge of the matters set forth herein, except for those matters stated on information and belief, and as to those matters, I believe them to be true.  If called as a witness, I could and would competently testify thereto.

2.     I am employed as a Lieutenant and Administrative Services Bureau Adjutant for the City of Inglewood Police Department ("Department").  I have been employed by the Department for nearly 15 years.

3.     Among other responsibilities, my current assignment includes supervision of the Department's Training Section.  As such, I am thoroughly familiar with the Department's training records and am the custodian of records of Department personnel records.

4.     I have reviewed relevant portions of Inglewood Police Officers Keith Rankins' and Ethan Siddall's, Detective David Thomas' and former Inglewood Police Officer David Frizelle's training records, which are maintained by the Department's Training Section.  The information contained in the training records is recorded at, or near the time of the subject occurrence of the matters set forth, by, or from information transmitted by, a person with knowledge of the matters, in the regular course of business, and it was the regular practice to record said activity.  Among other things, the training records contain the course name, whether the training is certified by the State of California Commission on Peace Officer Standards and Training ("P.O.S.T."), the number of hours, and a grade.

5.     The P.O.S.T. program is voluntary and its purpose is to raise the level of competence of law enforcement personnel. P.O.S.T. certificates recognize achievement in education, training, and experience.

6.     I am familiar with the various P.O.S.T. regulations as they relate to the training and certification of peace officers within the State.  Specifically, I am

DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ

familiar with P.O.S.T.'s requirement that a peace officer must obtain a Basic Certificate upon attending and completing a P.O.S.T. approved "Basic Course" and successfully completing a probationary period as a peace officer employed by a recognized law enforcement agency in California.  I am also familiar with P.O.S.T.'s requirements for the issuance of Intermediate and Advanced Certificates based on a combination of training, education, and years of law enforcement experience.

7.   I have reviewed the training records of former Officer David Frizelle. Former Officer Frizelle is no longer employed by the Department following his untimely death.   Accordingly, many of former Officer Frizelle's training records have been purged from the system used to maintain and track officer training records.  However, former Officer Frizelle's remaining training records indicate that he graduated from the Rio Hondo College Police Academy and successfully completed his probationary period as a peace officer with the Department.  At the Academy and Department former Officer Frizelle received a wide array of training including, but not limited to, courses in use of force, arrest methods and defensive tactics, and cultural diversity and anti-discrimination.  Further, former Officer Frizelle met the requirements for and had been issued by P.O.S.T. a Basic Certificate, which as explained above requires the completion of a probationary period as a peace officer of no less than one year and the satisfactory completion of a P.O.S.T. "Basic Course."

8.   I have reviewed the training records of Officer Keith Rankins, which show that he graduated from the Los Angeles Police Department Police Academy and successfully completed his probationary period as a peace officer with the Department.  At the Academy and Department, Officer Rankins received training in, among other subjects, the use of force, arrest methods and defensive tactics, and cultural diversity and anti-discrimination.  Since his enrollment in the Academy, Officer Rankins has received well in excess of 1200 hours of training, including,

but not limited to, courses in racial profiling and mobile field force tactics. Further, Officer Rankins has met the requirements for and has been issued by P.O.S.T. Basic and Intermediate Certificates, which as explained above requires the completion of a probationary period as a peace officer of no less than one year and the satisfactory completion of a P.O.S.T. "Basic Course."

9.    I have received the training records of Officer Ethan Siddall, which show that he graduated from the Rio Hondo College Police Academy and successfully completed his training as a peace officer with the Department. At the Academy and Department, Officer Siddall received training in, among other subjects, the use of force, arrest methods and defensive tactics, and cultural diversity and anti-discrimination. Since his enrollment in the Academy, Officer Siddall has received well in excess of 1000 hours of training, including, but not limited to, courses in racial profiling and mobile field force tactics. Further, Officer Siddall has met the requirements for and been issued by P.O.S.T. Basic, Intermediate and Advanced Certificates, which as explained above requires the completion of a probationary period as a peace officer of no less than one year and the satisfactory completion of a P.O.S.T. "Basic Course."

10.    I have received the training records of Detective David Thomas, which show that he graduated from the Rio Hondo College Police Academy and successfully completed his training as a peace officer with the Department. At the Academy and Department, Detective Thomas received training in, among other subjects, the use of force, arrest methods and defensive tactics, and cultural diversity and anti-discrimination. Since his enrollment in the Academy, Detective Thomas has received well in excess of 1350 hours of training, including, but not limited to, courses in racial profiling and mobile field force tactics. Further, Detective Thomas has met the requirements for and been issued by P.O.S.T. Basic, Intermediate, and Advanced Certificates, which as explained above requires

the completion of a probationary period as a peace officer of no less than one year and the satisfactory completion of a P.O.S.T. "Basic Course."

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed December 3, 2009, at Inglewood, California.

_____

LIEUTENANT MARK FRIED

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

### **DECLARATION DETECTIVE DAVID THOMAS**

I, Detective David Thomas, state and declare as follows:

1. On October 25, 2007, I was employed as a detective with the Inglewood Police Department.  If called upon to do so, I could and would competently testify to the facts set forth herein of my own personal knowledge.

2. Among other responsibilities, my current assignment as a detective for the Inglewood Police Department ("Department") assigned to the Robbery Unit involves conducting follow-up investigations of criminal activity and interviews of criminal suspects arrested in the City of Inglewood on suspicion of having committed robbery.

3. On or about October 25, 2007, I was assigned a case involving the arrest of a robbery suspect, later identified as Darren Reynolds and known as Plaintiff Darren Stephen Reynolds in this action, for further investigation and evaluation. Pursuant to said assignment, I reviewed the arrest materials generated for Plaintiff's arrest including, but not limited to, the incident report (DR # 07-11728), conducted a criminal background investigation of Plaintiff, contacted Plaintiff's then parole agent and interviewed both the store owner of the location where Plaintiff had been arrested and Plaintiff himself.

4. My review of the arrest materials generated following Plaintiff's October 25, 2007 arrest indicated that Plaintiff had been arrested at the 99 Cent Store located at 4323 West Century Blvd. in the City of Inglewood on suspicion of robbery.  As part of my follow-up investigation, I contacted Myung Park, owner of the 99 Cent Store where Plaintiff was arrested, to obtain his account of the events leading to Plaintiff's arrest.

5. Mr. Park indicated that on the date before the incident that forms the basis of this action, Plaintiff had come into his store and purchased a pair of socks without incident.  However, on October 25, 2007, Plaintiff returned to his store, retrieved a pair of socks, walked past the cashier without making an attempt to pay

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

for the socks, and headed towards the store's exit.  Mr. Park advised Plaintiff that he could not take the socks without first paying for them.  In response, Plaintiff indicated that he had already paid for the socks during his previous visit to the store but had failed to take the purchased socks with him.   Mr. Park then attempted to explain to Plaintiff that he had taken the socks that he had purchased the previous day and that he would not be allowed to leave the store with a new pair of socks he had not yet purchased.

6.   Despite Mr. Park's statement to Plaintiff, Plaintiff proceeded to exit the store with the socks he had not paid for.  As Plaintiff attempted to exit the store, Mr. Park grabbed the socks.  Thereafter Mr. Park and Plaintiff physically struggled for the socks.  During the struggle, Plaintiff dropped the socks to the floor.  Ultimately, Plaintiff pushed Mr. Park out of the way and left the store. Following the incident, Mr. Park told Plaintiff that he was no longer welcome at his store and provided a statement of what had transpired to the Inglewood Police Department Officers (Officers Siddall, Rankins, and former Officer Frizelle) who had arrived at the location.

7.   In furtherance of my follow-up investigation of the events leading to Plaintiff's arrest, I also conducted a criminal background check of Plaintiff and determined that he had an extensive criminal history.  Specifically, I determined that, at the time, Plaintiff was on parole for grand theft, petty theft, and providing false information to a police officer.  Because I had confirmed that Plaintiff was in fact on parole at the time of his arrest, I contacted his then parole agent who advised me that Plaintiff would be held on a parole violation for failure to report.

8.   I then responded to the Inglewood Police Department Jail and contacted Plaintiff for an interview.  Before the interview commenced, I advised Plaintiff of his Miranda rights.  Plaintiff waived his rights and voluntarily agreed to speak with me about the events leading to his October 25, 2007 arrest.

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

9.     Plaintiff advised me that on October 24, 2007 he went to the 99 Cent Store located at 4323 West Century Blvd. because he needed socks.  Plaintiff recounted that he entered the store, selected a pair of socks, and paid for the socks he had selected.  Before leaving the store with his purchase, Plaintiff noticed other merchandise he was interested in (t-shirts and hats) and went over to look at them. After looking at the additional merchandise, Plaintiff purchased a soda.  On the way out of the store, Plaintiff noticed that he did not have the socks he had just purchased and asked the store clerk what happened to the socks.  According to Plaintiff, the store clerk told Plaintiff that he had placed the socks he had just purchased in his pocket.  Plaintiff then left the store without incident. After arriving at his residence, Plaintiff stated that he noticed that he did not have the socks.

10.     The next day (October 25, 2007), Plaintiff stated that he happened to be in the vicinity of the store when he saw a friend enter the store.  Plaintiff followed his friend into the store.   Plaintiff stated that after he entered the store, he realized that he had left the socks he purchased the day before at the store. Without saying anything to the cashier or the store owner, Plaintiff retrieved another pair of socks from the display, waked past the cashier, and walked towards the store exit where the store owner, Mr. Park, had been standing.

11.     Plaintiff stated that the store owner told him he could not take the socks without paying for them.  According to Plaintiff, he explained to the store owner that he purchased a pair of socks the previous day but had accidently left them in the store and was taking another pair of socks to replace the pair he purchased the day before.

12.     Plaintiff stated that after he put the socks down and attempted to exit the store, the store owner attacked him by grabbing him, elbowing and punching him.

/ / / /

---

15

13.  During my interview of Plaintiff he advised me that he had been up for five days straight because he has a Cocaine habit.  When I asked Plaintiff about the inconsistencies in his account of what had transpired, Plaintiff abruptly stated he wanted a lawyer.  In response, I immediately terminated the interview without asking any further questions. At no time during the interview did I have any physical contact with Plaintiff or use any force whatsoever against Plaintiff.

14.  Following my follow-up investigation and based on the information I had obtained from the incident report, the statements of the store owner and Plaintiff himself, I formed the opinion that Plaintiff's actions did not meet the criteria for robbery pursuant to California Penal Code Section 211.   I based my opinion on the fact that the physical force Plaintiff had employed against the store owner was not motivated by his intent to seize the merchandise but rather his desire to flee the premises.  However, I did form the opinion that the underlying facts demonstrated that Plaintiff had committed the misdemeanor crime of petty theft.  Pursuant to findings, I submitted the case for prosecution to the Inglewood City Attorney's Office for a misdemeanor criminal filing rather than the Los Angeles District Attorney's Office for a felony criminal filing.

15.  Sometime thereafter I, as the investigating law enforcement officer, was required to provide testimony at Plaintiff's parole revocation hearing stemming from his October 25, 2007 arrest.  At said hearing when I was asked whether or not I believed plaintiff had committed the crime of burglary on October 25, 2007, I stated that based on my research and investigation, he had not.  Said inquiry was limited to my findings concerning Plaintiff's commission of the crime of robbery.  I was not asked whether or not it was my opinion whether or not Plaintiff had committed any other crime.   Had I been asked that question, I would have responded that I believed Plaintiff committed the crime of petty theft on October 25, 2007.  Following my testimony, Plaintiff said "thank you for telling the truth".

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

16.    I was never advised of the outcome of the parole revocation hearing nor did I make any such inquiries.  Additionally, I have had no further contact with Plaintiff since the date of said parole revocation hearing.

17.    Other than my follow-up investigation into the events leading to Plaintiff's October 25, 2007 arrest, I was in no way involved in Plaintiff's October 25, 2007 detention and arrest.  I was not on the scene when Plaintiff was detained and arrested.  Additionally, I did not participate in the pre-arrest investigation of the events leading to Plaintiff's arrest.  In fact, it was not until after Plaintiff was arrested and had been transported to the Inglewood Police Department Jail for booking, did I have any contact with Plaintiff or any of the arresting officers concerning the events leading to Plaintiff's arrest.

18.    I did not, in any way, conspire with the arresting officers to conjure up, manipulate or manufacture facts to warrant Plaintiff's detention and arrest.  Additionally, I was not involved in the drafting of the incident report that forms the basis of Plaintiff's October 5, 2007 arrest.

19.    Further, although I contacted Plaintiff's parole agent during my follow-up investigation, I did not then nor do I now have any power to instruct that a parole hold be placed on any parolee arrested within the City of Inglewood.  The placement of a parole hold upon a criminal suspect arrested in the City of Inglewood is strictly within the purview of the California Department of Corrections as exercised through its parole agents.  In this case, I did not, in any way, conspire with Plaintiff's then parole agent to conjure up, manipulate, or manufacture facts to warrant a parole hold being placed on Plaintiff.

20.    At no time during my interaction with Plaintiff did I see Officers Siddall, Rankins, former Officer Frizelle or any other Inglewood Police Department personnel use any force whatsoever against Plaintiff.

21.    Prior to being hired by the Inglewood Police Department, I graduated from the Rio Hondo College Police Academy.  Including my training at the Rio

17

Hondo College Police Academy, I have received numerous hours of training as a peace officer including, but not limited to, defensive tactics, mobile field force tactics, investigatory skills, racial profiling, arrest methods, use of force, cultural diversity, and anti-discrimination.

21.   Additionally, I have met the requirements for and been issued Basic, Intermediate, and Advanced Certificates by the State of California Commission on Peace Officer Standards and Training ("P.O.S.T.") based on my years of law enforcement experience, training, and education.  The P.O.S.T. program is voluntary and its purpose is to raise the level of competence of law enforcement personnel.  P.O.S.T. certificates recognize achievement in education, training, and experience.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on December 3rd 2009, at Inglewood, California.

_____/s/_____

DAVID THOMAS, Declarant

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

# DECLARATION OF KEITH RANKINS

I, Keith Rankins, state and declare as follows:

1.      On October 25, 2007, I was employed as an officer with the Inglewood Police Department.  If called upon to do so, I could and would competently testify to the facts set forth herein of my own personal knowledge.

2.      During the evening hours of October 25, 2007, I responded to a radio call of a robbery in progress at the 99 Cent Store located at 4323 West Century Blvd. in the City of Inglewood.

3.      After arriving at the location, I observed a male who matched the description of the suspect per the radio call.   The suspect was later identified as Stephen Reynolds (known in this litigation as Plaintiff Darren Stephen Reynolds). Because Plaintiff matched the description of the robbery suspect stated in the radio call, I, along, with Inglewood Police Officer Ethan Siddall decided to detain Plaintiff pending further investigation.

4.      Soon thereafter, former Inglewood Police Department Officer David Frizelle arrived at the location.  Officers Siddall, former Officer Frizelle, and I were the only law enforcement officers to respond to the location

5.      Pursuant to our investigation at the location, we learned that Plaintiff had entered the 99 Cent Store and selected a pair of socks from the display rack. After Plaintiff selected the pair of socks, he attempted to leave the store without paying for the socks.  Before Plaintiff could exit the store, the store owner, who had been standing near the store's entrance, told Plaintiff that he could not leave the store without paying for the socks.  When Plaintiff tried to get around the store owner, the store owner grabbed for the socks but Plaintiff would not release them. Thereafter Plaintiff and the store owner physically struggled for control of the socks.  Plaintiff, however, was able to push the store owner away.   Plaintiff then left the store but dropped the socks during the physical struggle with the store owner.

6.     The store owner identified Plaintiff as the person who took the socks and with whom he had physically struggled.

7.     Based on the information we gathered during our investigation, Plaintiff was placed under arrest for violation of California Penal Code Section 211 (robbery).

8.     At no time during the entire duration of our interaction with Plaintiff was force of any kind used against Plaintiff.  I did not use any force on Plaintiff and I did not observe either Officer Siddall or former Officer Frizelle use any force against Plaintiff during the time we detained him.  I did not use any force on Plaintiff and I did not observe either Officer Siddall or former Officer Frizelle use any force against Plaintiff when he was placed under arrest following our investigation.  Further, I did not use any force and I did not observe either Officer Siddall or former Officer Frizelle use any force on Plaintiff during Plaintiff's transport from the location of his arrest to the Inglewood Police Station.

9.     At no time during my interaction with Plaintiff did I hear Plaintiff complain that excessive force of any kind had been used against him by myself, Officer Siddall or former Officer Frizelle during his detention, arrest, or transport to the Inglewood City Jail.

10.     Following Plaintiff's arrest, as part of our normal custom and practice, we ran Plaintiff's name through a criminal database to determine whether or not he had prior warrants or was on parole.  We confirmed that Plaintiff was on parole for, among other things, dangerous drugs.  Accordingly, after making contact with Plaintiff's then parole agent, a parole hold was placed on Plaintiff pursuant to California Penal Code Section 3056.

11.  Prior to being hired by Inglewood Police Department, I graduated from the Los Angeles Police Department Police Academy.  Including my training at the Los Angeles Police Department Police Academy, I have received numerous hours of training as a peace officer including, but not limited to, defensive tactics, mobile

DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ

field force tactics, racial profiling, arrest methods, use of force, cultural diversity, and anti-discrimination.

12.     Additionally, I have met the requirements for and been issued Basic and Intermediate Certificates by the State of California Commission on Peace Officer Standards and Training ("P.O.S.T.") based on my years of law enforcement experience, training, and education.  The P.O.S.T. program is voluntary and its purpose is to raise the level of competence of law enforcement personnel. P.O.S.T. certificates recognize achievement in education, training, and experience.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 2, 2009 at Inglewood, California.


_____/s/_____

KEITH RANKINS

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

# DECLARATION OF ETHAN SIDDALL

I, Ethan Siddall, state and declare as follows:

1.      On October 25, 2007, I was employed as an officer with the Inglewood Police Department.  If called upon to do so, I could and would competently testify to the facts set forth herein of my own personal knowledge.

2.      During the evening hours of October 25, 2007, I responded to a radio call of a robbery in progress at the 99 Cent Store located at 4323 West Century Blvd. in the City of Inglewood.

3.      After arriving at the location, I observed a male who matched the description of the suspect per the radio call.   The suspect was later identified as Stephen Reynolds (known in this litigation as Plaintiff Darren Stephen Reynolds). Because Plaintiff matched the description of the robbery suspect stated in the radio call, I, along, with Inglewood Police Officer Keith Rankins decided to detain Plaintiff pending further investigation.

4.      Soon thereafter, former Inglewood Police Department Officer David Frizelle arrived at the location. Officers Rankins, former Officer Frizelle, and I were the only law enforcement officers to respond to the location.

5.      Pursuant to our investigation at the location, we learned that Plaintiff had entered the 99 Cent Store and selected a pair of socks from the display rack. After Plaintiff selected the pair of socks, he attempted to leave the store without paying for the socks.  Before Plaintiff could exit the store, the store owner, who had been standing near the store's entrance, told Plaintiff that he could not leave the store without paying for the socks.  When Plaintiff tried to get around the store owner, the store owner grabbed for the socks but Plaintiff would not release them. Thereafter Plaintiff and the store owner physically struggled for control of the socks.  Plaintiff, however, was able to push the store owner away.    Plaintiff then left the store but dropped the socks during the physical struggle with the store owner.

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

6.     The store owner identified Plaintiff as the person who took the socks and with whom he had physically struggled.

7.     Based on the information we gathered during our investigation, Plaintiff was placed under arrest for violation of California Penal Code Section 211 (robbery).

8.     At no time during the entire duration of our interaction with Plaintiff was force of any kind used against Plaintiff.  I did not use any force on Plaintiff and I did not observe either Officer Rankins or former Officer Frizelle use any force against Plaintiff during the time we detained him.  I did not use any force on Plaintiff and I did not observe either Officer Rankins or former Officer Frizelle use any force against Plaintiff when he was placed under arrest following our investigation.  Further, I did not use any force and I did not observe either Officer Rankins or former Officer Frizelle use any force on Plaintiff during Plaintiff's transport from the location of his arrest to the Inglewood Police Station.

9.     At no time during my interaction with Plaintiff did I hear Plaintiff complain that excessive force of any kind had been used against him by myself, Officer Rankins or former Officer Frizelle during his detention, arrest, or transport to the Inglewood City Jail.

10.     Following Plaintiff's arrest, as part of our normal custom and practice, we ran Plaintiff's name through a criminal database to determine whether or not he had prior warrants or was on parole.  We confirmed that Plaintiff was on parole for, among other things, dangerous drugs.  Accordingly, after making contact with Plaintiff's then parole agent, a parole hold was placed on Plaintiff pursuant to California Penal Code Section 3056.

11.  Prior to being hired by Inglewood Police Department, I graduated from the Rio Hondo College Police Academy.  Including my training at the Rio Hondo College Police Academy, I have received numerous hours of training as a peace officer including, but not limited to, defensive tactics, mobile field force tactics,

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

1   racial profiling, arrest methods, use of force, cultural diversity, and anti-

2   discrimination.

3        12.    Additionally, I have met the requirements for and been issued Basic,

4   Intermediate, and Advanced Certificates by the State of California Commission on

5   Peace Officer Standards and Training ("P.O.S.T.") based on my years of law

6   enforcement experience, training, and education.  The P.O.S.T. program is

7   voluntary and its purpose is to raise the level of competence of law enforcement

8   personnel. P.O.S.T. certificates recognize achievement in education, training, and

9   experience.

10        I declare under penalty of perjury under the laws of the United States of

11   America that the foregoing is true and correct.

12        Executed on December 2, 2009 at Inglewood, California.

13

14        _____/s/_____

15        ETHAN SIDDALL

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

**PROOF OF SERVICE**

STATE OF CALIFORNIA          )

                                                  ) SS.

COUNTY OF LOS ANGELES          )

    I am a resident of the County aforesaid; I am over the age of eighteen (18) years and not a party to the within entitled action; my business address is One W. Manchester Boulevard, Suite 860, Inglewood, California 90301.

    On **December 6, 2009**, I served the foregoing **DECLARATIONS OF TAUFIKI D. JOSHUA, LT. MARIE DIBERNARDO, LT. MARK FRIED, DETECTIVE DAVID THOMAS, KEITH RANKINS AND ETHAN SIDDALL; EXHIBITS SUBMITTED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY SUMMARY ADJUDICATION OF INDIVIDUAL ISSUES** on the interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, addressed as follows:

**\*\*\*\*SEE ATTACHED SERVICE LIST\*\*\*\***

    BY MAIL as follows: I am "readily familiar" with the City Attorney's Office's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully paid at Inglewood, California, in the ordinary course of business.

    I declare under penalty of perjury, under the laws of the United States of America and the State of California that the foregoing is true and correct.

    Executed on December 6, 2009, at Inglewood, California.

_____/s/_____
Taufiki D. Joshua

25

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**

# ***SERVICE LIST***

Mr. Darren Stephen Reynolds                    **PLAINTIFF IN PRO PER**
T-10846, L-4 126-L (ASU)
P.O. Box 2210
Susanville, CA 96127

**DEFENDANTS' DECLARATIONS IN SUPPORT OF MSJ**